UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MATTHEW EBERT,

    Plaintiff,

        v.                                  No. 3:16-cv-1386(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Matthew Ebert's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding his case for a rehearing. [Doc. # 16]. The Commissioner, in turn, has moved for an order

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

affirming her decision. [Doc. # 17]. After careful consideration of the arguments raised by the parties, the Court denies Plaintiff's motion and grants the Commissioner's motion.

## LEGAL STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258.

## BACKGROUND

**a. Facts**

Plaintiff filed his DIB application on December 4, 2012, alleging his disability began on that date. He last met the insured status requirements of the Social Security Act on September 30, 2014.[2] His claims were denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On January 14, 2015, a hearing was held before administrative law judge John Benson ("the ALJ"). On April 2, 2015, the ALJ issued a decision denying Plaintiff's claims. Plaintiff sought review with the Appeals Council, and also submitted to the Appeals Council additional evidence. The Appeals Council denied review of the ALJ's decision, and found that the additional evidence submitted did not meet the criteria for consideration under the regulations. Therefore, the ALJ's decision became the final decision of the Commissioner. This action followed.

Plaintiff is a veteran of the Gulf War era, serving in the Army from 1999 to 2004. (R. 8, 132). He completed college with a double major in philosophy and psychology. (R. 82). He last worked, in 2012, at the Department of Veterans Affairs ("VA") as a patient representative. (R. 84). Plaintiff testified that he resigned from this position because of his physical symptoms. (R. 85-86).

Plaintiff's complete medical history is set forth in the Joint Statement of Medical Facts filed by the parties. [Doc. # 23]. The Court adopts this statement and incorporates it by reference herein.

---

[2] Thus, the relevant period in this case – the period during which Plaintiff must establish disability – is from December 4, 2012 until September 30, 2014.

### b. The ALJ's Decision

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 404.1520 (a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

In this case, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured. (R. 47). At Step Two, the ALJ found Plaintiff had the following severe impairments: polyneuropathy; diabetes; intervertebral disc syndrome; tendinosis and bursitis of the left shoulder; obesity; post-traumatic

stress disorder ("PTSD"); generalized anxiety disorder; and depression.[3] (R. 47). At Step Three, the ALJ found these impairments did not meet or medically equal the severity of one of the listed impairments. (R. 48-51). Next, the ALJ determined Plaintiff retains the following residual functional capacity[4]:

> Plaintiff can perform light work except he cannot climb ladders, ropes, or scaffolds; he can frequently climb ramps and stairs and balance; he can occasionally stoop, crouch, kneel, and crawl; he can frequently reach overhead with the left upper extremity. He can have only occasional exposure to extreme cold and vibration. He can have no contact with the public, and contact with coworkers is limited such that he cannot engage in tandem tasks but can participate in occasional passing of products or material. He is limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements. He can be off task up to, but not exceeding, ten percent of the workday.

(R. 51-61). At Step Four, the ALJ found Plaintiff was unable to perform past work. (R. 61). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that there are jobs existing in significant numbers in the national economy Plaintiff can perform. (R. 62). Specifically, the VE testified that Plaintiff could perform the positions of small hospital products assembler, small products assembler I, and small products assembler II. (R. 62). Accordingly, the ALJ found Plaintiff not to be disabled.

## DISCUSSION

On appeal, Plaintiff advances a number of arguments, which the Court will address in turn.

---

[3] The ALJ found that celiac disease, migraine headaches, and chronic inflammatory demyelinating polyneuropathy ("CIDP") were not severe impairments. (R. 47-48).
[4] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his limitations. 20 C.F.R. § 404.1545(a)(1).

5

1. **Evaluation of Plaintiff's Impairments**

Plaintiff first argues that the ALJ erred in not finding that his celiac disease, migraine headaches, and CIDP were severe impairments. The Commissioner responds that these impairments did not result in any functional limitations significant enough to establish severity.

At Step Two, the ALJ must determine the "severity" of a claimant's impairments. Pursuant to the regulations, a medically determinable impairment, or a combination of impairments, is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)); *see also* SSR 85–28; 20 C.F.R. § 404.1520a. "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012). While the second step of the evaluation process is limited to screening out *de minimis* claims, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Id.* (internal quotation marks omitted).

The Court finds that substantial evidence supports the ALJ's Step Two finding. That medical records mention a diagnosis or presence of a particular condition is not commensurate with a finding of severity. *See id.* There is no evidence – and Plaintiff points to none in his brief – that establishes that celiac disease or CIDP *significantly limited* Plaintiff's ability to perform basic work activities. Likewise, there is no compelling evidence to suggest the ALJ erred in

finding Plaintiff's migraine headaches were non-severe.[5] Plaintiff reported experiencing them only five times per year, and that they lasted less than one day. (R. 439-42).

Further, an AJL's finding that an impairment is not severe at Step Two is harmless error when, as here, the ALJ finds other severe impairments and continues with the sequential evaluation. *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013). In such a circumstance, "because the ALJ did find several severe impairments and proceeded in the sequential process, all impairments, whether severe or not, were considered as part of the remaining steps." *Id.* In all the ALJ properly discussed all of Plaintiff's impairments – severe or not – in his decision.

**2. The RFC Finding**

Plaintiff makes three arguments that challenge the ALJ's RFC assessment.

***A. Evaluation of Opinion Evidence***

First, Plaintiff avers that the ALJ erred in weighing the opinion evidence. The ALJ must analyze medical opinions, along with the other evidence of record, when determining a claimant's RFC. When weighing opinion evidence, a treating source's opinion on the nature or severity of a claimant's impairments should be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not given controlling weight, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v.*

---

[5] In one part of his decision, the ALJ includes migraines in a list of impairments he found severe. In another part of the opinion, however, the ALJ explained – in full detail – why they were not severe. It is clear that the inclusion of migraines in the listing of severe impairments was a typographical error that cannot be the basis for remand in this case. *See Clark v. Colvin*, No. 13-CV-6628P, 2015 WL 1458628, at *15 (W.D.N.Y. Mar. 30, 2015) (finding one typographical error in an ALJ's decision was a harmless error not requiring remand).

*Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Those factors include "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight assigned. *Burgess,* 537 F.3d at 129. Here, the ALJ's evaluation of the opinion evidence was proper, and the weight assigned to the medical opinions is supported by substantial evidence.

Dr. Han, Plaintiff's primary care physician, complete an RFC assessment form on July 25, 2014. She listed Plaintiff's diagnoses as peripheral nerve disease, CIDP, lumbar radiculopathy, and insulin-dependent diabetes. (R. 887). His prognosis was fair to poor. (*Id.*). His symptoms were listed as vision abnormalities; balance issues; muscle fatigue, weakness, and loss; and chronic pain on the left side of the neck. (*Id.*). Dr. Han opined that Plaintiff's experience with pain would constantly interfere with the attention and concentration needed to perform even simple tasks. (R. 888). She limited him to sitting no more than thirty minutes at a time and for a maximum of four hours in a given work day. (*Id.*). She also limited him to standing for no more than fifteen minutes at a time and for a maximum of one to two hours in a workday. (*Id.*). Dr. Han indicated Plaintiff would miss about five days of work per month due to his impairments or treatment. (R. 890).

The ALJ explained that he gave Dr. Han's opinion "very little weight" because it did not provide any evidence in support of its conclusions, and was inconsistent with other significant evidence in the record. (R. 57).

The Court finds that Dr. Han's opinion was properly accorded limited weight. As the ALJ recognized, the limitations prescribed in the opinion are inconsistent with other evidence in the record. Dr. Han found that Plaintiff's pain would "constantly interfere" with his concentration and attention, but medical records from other providers indicate Plaintiff was not severely limited in these areas. For example, treatment notes from Dr. Whitaker, a neurologist, state Plaintiff could follow multistep commands "with precision," had intact memory recall, and a high level of cognition. (R. 817). And, Dr. Weiss, a consultative examiner, found Plaintiff's attention and concentration were "very good." (R. 617). Similarly, in contrast to Dr. Han's opinions on Plaintiff's limited ability to walk and stand in a workday, treatment notes from Dr. Lerer, a neurologist, indicate Plaintiff had normal muscle strength and an unremarkable gait. (R. 915). Dr. Whitaker's notes indicate a "slight waddling gait," but also state Plaintiff could rise out of a chair from a low seated position without the use of his upper extremities and an appropriate deep knee bend. (R. 818). Finally, Dr. Han listed as a diagnosis CIDP, which is in plain contrast to an EMG report interpreted by Dr. Whitaker in which the criteria for CIDP were not established. (R. 820). When, as here a treating source opinion is not consistent with the record as a whole, an ALJ may give it limited weight. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Stanton v. Astrue*, 370 Fed. App'x 231, 234 (2d Cir. 2010) (upholding an ALJ's decision to decline to give a treating source's opinion controlling weight when it was unsupported by other record evidence, and finding that the contradictory evidence constituted substantial support of the RFC determination).

Next, Plaintiff argues that the ALJ failed to weigh the opinions of Dr. Whitaker, Dr. Lerer, and Dr. Barwick. This argument is premised on an assumption that the records submitted by these providers constitute medical opinions, without any argument to support the position that the records are actually medical *opinions* entitled to weighing under the regulations. The Commissioner argues that the records from these providers are not opinions but are simply medical findings based on evaluation of Plaintiff, and so they did not need to be formally weighed by the ALJ.

Social Security Administration regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527. The records submitted by Drs. Whitaker, Lerer, and Barwick document Plaintiff's complaints, tests performed, and treatment prescribed, but they do not "reflect judgments" about the character and nature of Plaintiff's impairments. Thus, they are not medical opinions entitled to weighing. *See Moua v. Colvin*, 541 F. App'x 794, 797 (10th Cir. 2013) (finding treatment notes that document claimant's complaints and prescribed treatments were not medical opinions). *Cf. Midgett v. Berryhill*, No. 16-CV-2876 (ADS), 2017 WL 6463062, at *8 (E.D.N.Y. Dec. 18, 2017) (finding records that went beyond listing symptoms detailed by claimant or medical testing performed were "more than treatment notes" that the ALJ was required to weigh). In addition, although the ALJ did not assign weight to these records, he did discuss them in appropriate detail. It is very clear from the opinion that the ALJ fully considered the information provided from these doctors in making the RFC finding.

Plaintiff also avers that the ALJ erred in giving partial weight to Dr. Weiss's opinion. Dr. Weiss conduced a psychological diagnostic evaluation of Plaintiff on February 25, 2013. He opined that Plaintiff's PTSD would result in significant difficulty with completing work quickly and efficiently, with focusing appropriately on work tasks, and with developing positive relationships with others in the workplace. (R. 618). The ALJ gave Dr. Weiss's opinion partial weight, finding that the opinion as to Plaintiff's social functioning was inconsistent with objective evidence showing a greater ability to focus on work tasks. (R. 59). The ALJ's decision to discount Dr. Weiss's opinion is supported by the record. Treatment notes regularly show no impairment in memory or concentration. (R. 794, 801, 850, 878). In addition, Plaintiff could follow multistep commands "with precision," had intact memory recall, and a high level of cognition. (R. 817). In fact, Dr. Weiss found Plaintiff's attention and concentration were "very good." (R. 617). Given the evidence in the record that is not consistent with Dr. Weiss's opinion, the ALJ did not err in giving it partial weight.

Finally, Plaintiff contends that the ALJ erred in giving great weight to the opinions of the state agency medical consultants. The Court disagrees. It is well-established that "state agency medical consultants are recognized experts in evaluation of medical issues in disability claims under the Act," and that "their opinions can constitute substantial evidence." *Younes v. Colvin*, No. 1:14-CV-170 DNH/ESH, 2015 WL 1524417, at *5 (N.D.N.Y. Apr. 2, 2015) (quoting 20 C.F.R. § 404.1527(e)(2)). When a non-examining source's opinion is more consistent with the record as a whole than the opinion of a treating source, the non-examining opinion can be given greater weight. *Scott v. Berryhill*, No. 3:17-CV-211(JAM), 2018 WL 1608807, at *6 (D. Conn. March 31, 2018).

### B. Sufficiency of the RFC

11

Second, Plaintiff argues that the RFC should have contained limitations to account for his PTSD and his hand and finger impairments.

With respect to the PTSD, the findings discussed above as to Plaintiff's attention and concentration support the ALJ's conclusion that Plaintiff could perform simple, routine, repetitive tasks in a work environment free of fast-paced production requirements where he can have no contact with the public and limited contact with coworkers.

As to the hand and finger impairments, although there is some documentation of hand tremors and numbness, there is no indication – and Plaintiff does not persuasively argue otherwise – that these conditions significantly limited his ability to do basic work activities. In fact, the record also shows Plaintiff was neurologically intact and had full muscle strength, *see* R. 818, 915, 922, and that Plaintiff reported he could complete daily activities such as cooking, driving, shopping, and knitting, *see* R. 282-84. This evidence is inconsistent with a claim that his hand and finger condition significantly limited his ability to perform basic work activities.

### *Evaluation of Plaintiff's Credibility*

Third, Plaintiff maintains that the ALJ erred in discounting his credibility. The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not fully credible. The ALJ explained this finding by discussing the objective medical evidence, including Plaintiff's failure to pursue, or follow through with, treatment.

When determining a claimant's RFC, the ALJ is required to take into account the claimant's reports of pain and other limitations; the ALJ is not, however, required to accept the claimant's subjective complaints without question. *Taylor v. Astrue,* No. 3:09-CV-1049, 2010 WL 7865031, at *9 (D. Conn. Aug. 31, 2010). Instead, the ALJ must weigh the credibility of the claimant's complaints in light of the other evidence of record. The regulations set forth a two-

step process for this evaluation. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529. Next, the ALJ must determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. *Id.*

The Court finds that the ALJ did not err in assessing Plaintiff's credibility. SSR 96-7p instructs as follows with respect to a claimant's compliance with medical treatment:

> …[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A. July 2, 1996). A claimant's attempts, or lack thereof, to seek treatment are a valid part of a credibility assessment. *See id.* at *7("A longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual statements."); *see also Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (viewing gaps in the medical record as "evidence" contradicting claimant's allegations of unrelenting pain); *Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992) (finding that a claimant's failure to follow prescribed treatment contradicted his subjective complaints of pain); *Taylor*, 2010 WL 7865031, at *11 (holding that a claimant's

failure to adhere to prescribed treatment, as well as gaps in treatment, are relevant considerations in the assessment of a claimant's credibility). Here, the record indicates that Plaintiff did not complete physical therapy, and went for a year without mental health treatment at the VA. (R. 510, 800). The ALJ properly considered this evidence in finding it contradicted Plaintiff's allegations as to the intensity of his symptoms.

Plaintiff also contends that the ALJ erred by not allowing his wife to testify at the hearing. There is no error in this case. The record contained a statement from Plaintiff's wife, which the ALJ reviewed prior to the hearing. (R. 328-29, 105). At the hearing, in response to the ALJ's question of whether Plaintiff's wife had anything to add beyond what was submitted, Plaintiff's counsel stated that her testimony would be consistent with the statement. (R. 105). The outcome may be different if the ALJ discounted a claimant's credibility and did not consider *any* evidence from a witness who could corroborate Plaintiff's complaints, but this is not that case. Here, Plaintiff's wife submitted a statement for the ALJ to read, the ALJ read it, and counsel for the Plaintiff stated that the testimony the wife would provide would be consistent with the statement. The Court cannot say that the ALJ erred in not allowing duplicative information to be presented in this case. *Cf. Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 149-50 (2d Cir. 1984) (finding the ALJ should have allowed a claimant's witness to testify when the witness could have provided relevant, probative, non-cumulative evidence about the claimant's inability to function where the claimant appeared *pro se* and spoke little English).

Finally, it is the function of the Commissioner, and not the reviewing court, to appraise the claimant's credibility. *See Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). "Credibility findings of an ALJ are entitled to great deference and therefore can

be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (citing *Lennon v. Waterfront Transport,* 20 F.3d 658, 661 (5th Cir.1994)). There is no such unreasonableness here.

### 3. The Step Five Finding

Plaintiff next contends that the ALJ erred in his Step Five finding because the jobs the VE testified Plaintiff could perform exceed the RFC's limitation to simple work. Plaintiff also argues that the ALJ should have ordered the VE to produce or identify the documents she relied upon in reaching her conclusions.

At Step Five, the Commissioner must show the existence of work in the national economy that a claimant can perform. 20 C.F.R. § 404.1512(b)(3). To satisfy this burden, "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based [the] opinion, and [the hypotheticals] accurately reflect the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (internal quotation marks and citations omitted).

Here, the VE identified three positions that Plaintiff could perform. Plaintiff argues that all three of these positions have a reasoning level of two, which exceeds the RFC limitation to simple, routine, repetitive tasks.

The *Dictionary of Occupational Titles* lists jobs appropriate for individuals with specific levels of reasoning development, ranging from level one (the lowest level of development) to level six (the highest level). Jobs with a reasoning level of two require a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and to] [d]eal with problems involving a few concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, Appendix C, available at

15

https://occupationalinfo.org/appendxc_1.html#III. Courts in this circuit have routinely found that a limitation to simple tasks or instructions is consistent with reasoning level two. *See Jones-Reid*, 934 F. Supp. 2d at 408; *Lofton v. Colvin*, No. 3:13-CV-528 JBA, 2015 WL 2367692, at *27 (D. Conn. May 13, 2015); *Carrigan v. Astrue*, No. 2:10-CV-303, 2011 WL 4372651, at *11 (D. Vt. Aug. 26, 2011), *report and recommendation adopted,* No. 2:10 CV 303, 2011 WL 4372494 (D. Vt. Sept. 19, 2011).

In addition, the VE was not required to produce or identify the sources upon which she relied. The Second Circuit has made clear that "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally." *McIntyre*, 758 F.3d at 152. *See also Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008) (explaining that when a VE identifies the sources generally consulted to determine the number of jobs available, the VE is not required to "identify with greater specificity the source of his figures or to provide supporting documentation."); *Jones-Reid*, 934 F. Supp. 2d at 407 (finding that when a VE "utilized reliable statistical sources as well personal knowledge and experience to develop the occupational projections provided," a "step-by-step description of the methodology used" was not required.). The Commissioner has met her Step Five burden.

### 4. Additional Evidence Submitted to the Appeals Council

Finally, Plaintiff maintains that the Appeals Council should have considered the additional evidence Plaintiff presented to it. The Court disagrees.

20 C.F.R. § 405.401(c)[6] provides as follows:

If you submit additional evidence, the Appeals Council will consider the additional evidence only where it relates to the period on or before the date of the

---

[6] The regulation has been updated and can now be found at 20 C.F.R. § 404.970. *See Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90987 (Dec. 16, 2016).

16

> hearing decision, and only if you show that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would change the outcome of the decision, and
> > (1) Our action misled you;
> > (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or
> > (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

C.F.R. § 405.401(c). Thus, the Appeals Council will consider additional evidence if (1) the evidence relates to the period on or before the hearing decision; (2) there is a reasonable probability that the evidence would have changed the ALJ's decision; and (3) either (a) the SSA misled the claimant, (b) some impairment prevented timely submission of the evidence, or (c) some other circumstance beyond claimant's control prevented timely submission. *See Scott*, 2018 WL 1608807, at *7. The third element has been called a "good cause" factor. *Id.*

Here, Plaintiff submitted to the Appeals Council five pieces of additional evidence. First, Plaintiff submitted three items of evidence from after the relevant period, including a VA disability decision from February 1, 2016, a neurology report from January 7, 2016, and mental health treatment notes from December 30, 2015. This evidence does not meet the requirements of 20 C.F.R. § 405.401(c) because it does not relate to the relevant period – December 2012 to September 2014. The VA disability decision establishes a disability rating effective January 7, 2016, well outside of the period the ALJ considered. The Court does not see how records from over a year later relate to the relevant period, and besides summarily stating they are probative of his condition, Plaintiff does not persuasively argue otherwise. There is also no reasonable probability the evidence would change the outcome of the decision. While the VA does assign Plaintiff a partial disability rating, "[a] determination made by another agency regarding a claimant's disability is not binding on the Social Security Administration." *Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2013). Though *Atwater* instructs that such a determination should be

considered by an ALJ, it does not address the issue in light of 20 C.F.R. § 405.401(c). And, a partial disability rating by another agency does not equate to a finding of disability under the Social Security Act. Likewise, although the neurology report finds moderate to moderately severe functional limitations, it also states that Plaintiff remains independent in his activities of daily living. (R. 19, 26). And, the mental health treatment notes state that Plaintiff "did not endorse that his mental health conditions impacted his ability to maintain employment." (R. 30). These notes also indicate that there was no change in Plaintiff's level of functioning since a 2014 exam. (R. 29). Thus, the Court does not see how these records would change the outcome of the ALJ's decision. In fact, they appear to be consistent with it.

Next, Plaintiff submitted evidence from before the relevant period: medical records from 1999-2005. These records are well outside of the period the ALJ considered, and thus do not meet the regulatory requirements for consideration. In addition, Plaintiff has not shown good cause for failing to submit these records earlier. While Plaintiff states that these records are now relevant due to the ALJ's negative credibility finding, the Court finds this insufficient to establish good cause under 20 C.F.R. § 405.401(c).

Finally, Plaintiff submitted a VA disability decision dated December 18, 2012 wherein the VA assigned Plaintiff a partial disability rating. While this piece of evidence relates to the relevant period, it does not meet the other requirements for consideration: Plaintiff does not establish good cause for not submitting the evidence sooner, and Plaintiff fails to show how this evidence could change the outcome of the ALJ's decision. Since the VA decision does not find

18

Plaintiff one hundred percent disabled and is not binding on the ALJ, the Court does not see how there is a reasonable probability it would change the outcome of the ALJ's decision.[7]

Plaintiff also argues that all five items of evidence should have been considered under what he refers to as the "all evidence rule," which imposes an ongoing duty on claimants to submit "all evidence known to you that relates to whether you are blind or disabled" at each level of the review process. 20 C.F.R. § 404.1512. This regulation does not, however, apply to the submission of evidence after the ALJ's decision such that it supplants the requirements of 20 C.F.R. § 405.401(c). Plaintiff's counsel has raised this argument in another case, and it has been rejected there as well: *See Smith v. Colvin*, No. 3:14-CV-1752 (SRU), 2016 WL 1170910, at *7 (D. Conn. Mar. 23, 2016) ("Requiring a claimant to submit all evidence, however, is not equivalent to requiring all adjudicators to accept it, particularly when the submission of evidence has been delayed without good cause.").

Finally, Plaintiff posits that the Appeals Council erred by not fully explaining its decision not to consider the additional evidence. Since, however, the Appeals Council only issued a notice denying review of the ALJ's decision, it was not required to provide the level of analysis Plaintiff argues was necessary. *See Turner v. Comm'r of Soc. Sec.*, No. 5:15-CV-75, 2016 WL 3597788, at *15 (D. Vt. June 27, 2016) (finding the Appeals Council did not need to discuss its 20 C.F.R. § 405.401(c) analysis when it properly concluded there was no reasonable probability

---

[7] Plaintiff claims the ALJ erred in not requesting his service medical records. For the reasons discussed above, the Court finds no error in the ALJ's development of the record. Since Plaintiff has not shown that the additional evidence would have changed the outcome of the ALJ's decision, there is no prejudice. *See Lena v. Astrue*, No. 3:10cv893(SRU), 2012 WL 171305 at *9 (D. Conn. Jan 20, 2012) ("Absent any showing of prejudice, the ALJ did not fail to meet his burden of developing the record and did not rely on incompetent evidence in deciding this case.").

19

the additional evidence would change the outcome of the ALJ's decision). In all, there was no error at the Appeals Council level.

## **Conclusion**

After a thorough review of the record and consideration of all of the arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion is supported by substantial evidence. Accordingly, the Court grants Defendant's Motion to Affirm and denies Plaintiff's Motion to Reverse.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED, this  19th  day of June, 2018, at Bridgeport, Connecticut.

*/s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge